UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:18-cv-53-FDW

| JOSHUA GLENN MCRAVION, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
|  | ) | **ORDER** |
|  | ) |  |
| TIFFANY GENTRY CLINE, et al., | ) |  |
|  | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**THIS MATTER** comes before the Court on a Motion to Dismiss, (Doc. 23), filed by Defendants Tiffany Gentry Cline and Dennis Harris, and on a separate Motion to Dismiss, filed by Defendant Micah J. Sanderson (Doc. 28).

**I. BACKGROUND**

Pro se Plaintiff Joshua Glenn McRavion is a state prisoner currently incarcerated at Maury Correctional Institution in Hookerton, North Carolina. Plaintiff is serving a 19- to 49-month sentence after being convicted on April 2, 2019, of Malicious Conduct/Prisoner and Assault with a Deadly Weapon in Lincoln County, North Carolina.[1] Plaintiff filed this action on March 16,

---

[1] On September 23, 2016, while in custody at Lincoln County Detention Center for the state charges at issue in this lawsuit, Plaintiff attacked another inmate, and Plaintiff was subsequently convicted, on June 6, 2017, of assault with a deadly weapon with intent to kill that inmate. See State v. McRavion, 816 S.E.2d 267 (2018). On July 3, 2018, the North Carolina Court of Appeals reversed the conviction and ordered a new trial for Plaintiff, and he was transferred from Polk Correctional Institution back to the Lincoln County Detention Center on July 27, 2018. Id. When Plaintiff filed this action, he was back in custody at the Lincoln County Detention Center, awaiting a new trial on the assault charge. Then, in October 2018, he committed an offense that led to the charge and subsequent conviction for malicious conduct by a prisoner.

1

2018, pursuant to 42 U.S.C. § 1983. On August 23, 2018, following a frivolity review, this Court allowed Plaintiff to proceed on his claims. (Doc. 11). Plaintiff amended his Complaint on October 9, 2018. (Doc. 21). Plaintiff has named as Defendants (1) Tiffany Cline, a detective with the Lincolnton Police Department, (2) Dennis Harris, a Sergeant with the Lincolnton Police Department, and (3) Micah J. Sanderson, an Assistant District Attorney for Lincoln County. (Id. at 2-3). Plaintiff identifies the following as the claims he brings in this action: "14th Amendment Equal Protection of Laws; Fourth Amendment Rights against Unlawful Searches and Seizures; Obstruction of Justice (G.S. 14-225); N.C. Law of the Land Clause; 6th Amendment Speedy Trial; 8th Amendment Cruel and Unusual Punishment, Malicious Prosecution, Wrongful Imprisonment, Miranda Rights Violations." (Id. at 3).

Plaintiff's allegations do not clearly articulate the grounds for these purported claims. Furthermore, it is not exactly clear which of these claims apply to each particular Defendant. Plaintiff appears to allege that, on May 12, 2015, a parole or probation officer searched his home without a search warrant, which led to the revocation of his parole status, as well as charges for drug possession. (Id. at 4). Plaintiff alleges he informed Cline he was shot and robbed on May 10, 2015, and Cline did not properly investigate Plaintiff's report. (Id.). He further alleges Cline took him to the Magistrate's office and had him charged with assault with a deadly weapon with intent to kill, inflicting serious injury with intent to kill, and possession of firearm by a felon. (Id.). According to Plaintiff, Cline supported this charge with an eyewitness statement signed by a witness under a fictitious name. (Id.). Plaintiff claims that Cline was grossly negligent by not properly confirming the witness's identity, and that this conduct by Cline constituted "obstruction of justice." (Id.). Plaintiff also appears to allege that Harris also obstructed justice by not intervening during this process. (Id.). In addition, as to Harris, Plaintiff also alleges that Harris

2

took him into custody and questioned him about the shooting without first reading him his Miranda rights. (Id. at 5).

As to Assistant District Attorney Sanderson, Plaintiff alleges that Sanderson has held Plaintiff since May 12, 2015, on the two charges pending against him, while knowing that Defendants Cline and Harris violated Plaintiff's rights. (Id.). Plaintiff asserts that he filed a claim for a speedy trial after he had been in custody for eighteen (18) and twenty-seven (27) months, but that he was not granted a speedy trial. (Id.). Plaintiff further alleges that Defendant Sanderson violated his Eighth Amendment rights by colluding with the other Defendants regarding his confession statement and that Defendant Sanderson "manipulated" the trial calendar so that Plaintiff's attorney would not be properly prepared for the trial. (Id.). Plaintiff alleges that Defendant Sanderson refused to dismiss the two charges against him. (Id.). Plaintiff further alleges that Defendant Sanderson abused his authority given to him pursuant to N.C. GEN. STAT. § 7A-61, relating to managing the trial docket and duties of a prosecutor, and § 15A-931, relating to voluntary dismissals of charges, as he held the plaintiff's case in limbo for thirty-three months before another unnamed ADA dismissed them. (Id. at 5-6).

Plaintiff asserts that Defendant Sanderson charged him with being a habitual felon in retaliation for invoking his Sixth Amendment right to a speedy trial and that Defendant Sanderson violated Plaintiff's procedural due process rights by holding Plaintiff with no bond reduction hearing and by placing Plaintiff's case as number twelve of thirteen on the trial docket. (Id.). Finally, Plaintiff asserts that Defendant Sanderson showed direct and serious neglect for his rights in that Defendant Sanderson held him on charges that were later dismissed, but that he tried Plaintiff on another charge while he was in custody awaiting trial on the May 12, 2015, charges. (Id.). Based on Plaintiff's statement of facts, it appears that he brings this action pursuant to 42

U.S.C. § 1983 against Defendant Sanderson, in his official and individual capacity, for alleged violations of his right to a speedy trial pursuant to the Sixth Amendment, his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment, and his right to procedural due process under the Fourteenth Amendment, and he asserts claims for malicious prosecution and wrongful imprisonment. (Id. at 5-6). For relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief "from harassment of Lincolnton City Police for bringing this suit" and "in the form of making sure that Defendant Sanderson applies the rules or Speedy Trial and [other North Carolina statutory rules]." (Id. at 7).

On October 24, 2018, Defendants Cline and Harris filed their pending motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 23). On October 30, 2018, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion to dismiss. (Doc. 27). Then, on October 30, 2018, Defendant Sanderson filed his own motion to dismiss for failure to state a claim and for lack of jurisdiction, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 28). This Court entered another Roseboro notice on November 5, 2018. (Doc. 30). Plaintiff filed responses to the motions to dismiss and Defendants Cline and Harris filed a Reply. (Docs. 33, 35, 36, 40). Thus, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations

4

constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the Plaintiff. Priority Auto Grp., Inc. v. Ford Motor Credit Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

Under Rule 12(b)(1), a party may seek dismissal based on the court's "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). Subject-matter jurisdiction is a threshold issue that relates to the court's power to hear a case and must be decided before a determination on the merits of the case. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A motion under Rule 12(b)(1) raises the question "whether [the plaintiff] has a right to be in the district court at all and whether the court has the power to hear and dispose of [the] claim." Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 452 (4th Cir. 2012). The

burden of proving subject-matter jurisdiction rests with the plaintiff. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When evaluating a Rule 12(b)(1) motion to dismiss, a court should grant the motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

## III. DISCUSSION

### A. Plaintiff's Claims for Declaratory or Injunctive Relief

In the Amended Complaint, Plaintiff seeks injunctive relief in the form of freedom "from harassment of Lincolnton City Police for bringing this suit" and "in the form of making sure that Defendant Sanderson applies the rules or Speedy Trial and [other North Carolina statutory rules]." (Id. at 7). The Court finds that, because Plaintiff has been transferred away from the Lincoln County Jail, Plaintiff's claim for injunctive relief is moot and will be dismissed. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991) (noting that a prisoner's transfer moots a Section 1983 request for declaratory and injunctive relief when the conditions of which the prisoner claims are unlikely to recur).

### B. Plaintiff's Remaining Claims

#### 1. Plaintiff's Damages Claims Against Defendants Harris and Cline

First, to the extent that Plaintiff purports to sue Defendants Harris and Cline in their official capacities, the Court will grant Defendants' motion to dismiss. A claim against Defendants in their official capacities is a claim against Lincoln County. Plaintiff has not alleged any facts in the Amended Complaint to support a claim that the alleged violation of rights by Harris and Cline were caused by an official policy or custom of Lincoln County. See Petty v. Byers, No. 1:16-cv-

6

237, 2017 WL 870468, at *4 (W.D.N.C. Feb. 1, 2017) ("Fatal to Plaintiff's official capacity Section 1983 claims against Defendants is that the Amended Complaint fails to allege a policy, custom, or practice that resulted in a violation of Plaintiff's rights as guaranteed by the United States Constitution."). Therefore, to the extent Plaintiff is attempting to bring claims against Cline and Harris in their respective official capacities, those claims likewise fail as a matter of law. See Bailey v. Polk Cty., N.C., No. 1:10-cv-264, 2011 WL 4565469, at *7 (W.D.N.C. Mar. 7, 2011).

Next, as to Plaintiff's claims against Defendants Cline and Harris in their individual capacities, Plaintiff first alleges that Defendant Harris "used the parole/probation office" to conduct a warrantless search of his residence on May 12, 2015, which violated his Fourth Amendment rights.[2] (Doc. 21 at 4). Plaintiff admits the challenged search was conducted by the "parole/probation office" and does not allege Harris conducted the search, ordered the search, or even participated in the search. Therefore, Plaintiff fails to state a claim that Harris violated Plaintiff's Fourth Amendment rights.

In any event, North Carolina authorizes warrantless searches of probationers by probation officers in certain circumstances. See N.C. GEN. STAT. § 15A-1343(b)(13). The Fourth Circuit has held that searches conducted in conformity with N.C. GEN. STAT. § 15A-1343(b)(13) are reasonable under the Fourth Amendment. United States v. Midgette, 478 F.3d 616, 624 (4th Cir. 2007). Here, Plaintiff does not allege the parole/probation officer who conducted the search violated any laws or rights. Even if Harris participated in the search with the parole/probation

---

[2] According to Plaintiff, this search resulted in charges of misdemeanor possession and Plaintiff "willing[ly] took a parole violation." (Id. at 5). Therefore, it is unclear if Plaintiff is challenging the revocation of his parole. In any event, as the Court stated on initial review, any claim for damages based on revocation of Plaintiff's parole is barred under the principles of Heck v. Humphrey, 512 U.S. 477 (1994).

7

officer, such involvement would not violate Plaintiff's Fourth Amendment rights.  See Midgette, 478 F.3d at 626 ("North Carolina cases hold that police officers may conduct the warrantless search of a probationer–indeed may even suggest the search–so long as the search is authorized and directed by the probation officer.").

Plaintiff next alleges that Defendant Harris took him into custody on May 12, 2015, and questioned Plaintiff as a suspect in a shooting but never read him his Miranda rights, thus "violating [his] Miranda Rights."  (Doc. 21 at 4-5).  Plaintiff's allegation of a Miranda rights violation does not support a Section 1983 claim for damages.  As this Court recently stated, "[w]hile Plaintiff's allegations might suffice to prevent the use in a criminal trial of any statements he made to Defendants after requesting counsel, violations of Miranda procedures do not form the basis of a § 1983 claim for damages."  Erwin v. Rodriguez, No. 1:17-cv-00103-FDW, 2017 WL 4052167, at *2 (W.D.N.C. Sept. 13, 2017) (citing Chavez v. Martinez, 538 U.S. 760, 772 (2003) ("Chavez's failure to read Miranda warnings to Martinez did not violate Martinez's constitutional rights and cannot be grounds for a § 1983 action.")); see also Jones v. Cannon, 174 F.3d 1271, 1291 (11th Cir. 1999) ("[F]ailing to follow Miranda procedures triggers the prophylactic protection of the exclusion of evidence, but does not violate any substantive Fifth Amendment right such that a cause of action for money damages under § 1983 is created.").

Here, Plaintiff fails to provide any specific facts regarding the statements made to Harris.  Plaintiff does not allege the statements he made were used against him in any criminal trial proceedings, nor could they have been since the charge was ultimately dropped.  Therefore, Plaintiff has not stated a claim of a constitutional violation under the Fifth Amendment.  See, e.g., Burrell v. Virginia, 395 F.3d 508, 513-14 (4th Cir. 2005) (concluding, pursuant to Chavez, that a Section 1983 complaint failed to state a claim where plaintiff did "not allege any trial action that

8

violated his Fifth Amendment rights"). Because Plaintiff has not stated a claim of a constitutional violation of his Fifth Amendment rights, he has not stated a claim for relief under Section 1983. Accordingly, Plaintiff's Section 1983 claims against Harris fail as a matter of law and will be dismissed.

Plaintiff next alleges that Defendant Cline failed to investigate Plaintiff's report of a crime, thus violating Plaintiff's "14th Amendment Equal Protection of Laws and the NC Law of the Land Clause." (Doc. 21 at 4).³ This claim, however, does not give rise to any constitutional right for purposes of a Section 1983 claim. See Doe v. Mayor & City Council of Pocomoke City, 745 F. Supp. 1137, 1139 (D. Md. 1990) ("The Court is not aware of a constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime."). In Sattler v. Johnson, 857 F.2d 224 (4th Cir. 1988), the Fourth Circuit addressed this issue:

> Sattler's counsel suggested that Sattler had an enforceable right as a member of the public at large and as a victim to have the defendants criminally prosecuted. He further urged that such a right was protected by the equal protection clause of the fourteenth amendment. There is, of course, no such constitutional right....

Id. at 227. See also Sellner v. Panagoulis, 565 F. Supp. 238, 250 (D. Md. 1982) (stating that the court was not aware "of any right afforded by either the Constitution or laws of the United States to private persons to compel a state to prosecute criminal activity"), aff'd without opinion, 796 F.2d 474 (4th Cir. 1986), cert. denied, 479 U.S. 1069 (1987). As a result, Cline cannot be held liable under Section 1983 based on an alleged failure to investigate Plaintiff's reports of an alleged crime.

---

³ The "Law of the Land Clause" refers to Article I, Section 19 of the North Carolina Constitution, which incorporates federal due process and equal protection principles. North Carolina courts have held "the law of the land clause has the same meaning as due process of law under the Federal Constitution." North Carolina v. Fowler, 197 N.C. App. 1, 20, 676 S.E.2d 523, 540 (2009).

9

Plaintiff also appears to be bringing a claim against Cline for violation of his Eighth Amendment rights and malicious prosecution by stating "Plaintiff's 8th Amendment Rights to be free from cruel and unusual punishment and malicious prosecution were violated by Cline when Cline processed all of the false evidence against Plaintiff thus holding Plaintiff without proper due process." (Doc. 21 at 5). Other than vaguely mentioning his Eighth Amendment right to be free of cruel and unusual punishment was violated, Plaintiff does not allege any facts in support of an Eighth Amendment claim. The Court is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement ...." Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see also Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009). As a result, Plaintiff's Eighth Amendment claim, if any, fails.

Even if the Court were to construe Plaintiff's claim against Cline as a malicious prosecution claim under the Fourth Amendment, that claim likewise fails. A Section 1983 claim for malicious prosecution is properly construed as a claim under the Fourth Amendment for an unreasonable seizure that also incorporates certain elements of the common law tort for malicious prosecution. Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012). "To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Id. Ordinarily, the subsequent acts of independent decision-makers such as prosecutors break the causal chain between an officer's conduct and a plaintiff's seizure and insulate the officer from liability. Id. "Stated differently, a police officer is not liable for a plaintiff's unlawful seizure following indictment in the absence of evidence that the officer misled or pressured the prosecution." Id. at 648 (internal quotation and citation omitted).

In North Carolina, state district attorneys have the sole discretion to decide whether to prosecute. See State v. Ward, 354 N.C. 231, 243, 555 S.E.2d 251, 260 (2001) (citing N.C. Const. Art. IV § 18(1)). Here, Cline did not "hold Plaintiff without proper due process" as Plaintiff alleges. Rather, the subsequent acts of the prosecutor insulate Cline from liability. Without providing any supporting facts, Plaintiff vaguely alleges Cline "processed all of the false evidence against Plaintiff." (Doc. 21 at 5). Plaintiff does not allege that Cline misled or pressured the prosecutor. In fact, Plaintiff brings a claim for malicious prosecution against the prosecutor Defendant Sanderson as well. (Id.). As a result, Plaintiff's Section 1983 malicious prosecution claim against Defendant Cline will be dismissed.[4]

Plaintiff also appears to bring claims against Cline and Harris for "obstruction of justice." Plaintiff alleges that Cline was "grossly negligent" by not properly identifying a witness who provided a witness statement under a fictitious name. (Id.). Plaintiff further alleges this witness statement was used to keep him in custody. (Id.). Plaintiff contends that Cline's negligence constituted "obstruction of justice." (Id.). Plaintiff also appears to allege Harris also obstructed justice by not intervening during this process.[5] (Id.). Plaintiff's obstruction of justice claim appears to be brought pursuant to N.C. GEN. STAT. § 14-225, titled "False reports to law enforcement agencies or officers." (Doc. 21 at 3, 5). This statute applies to citizens who hinder law enforcement activities, not law enforcement officers. See State v. Dietze, 190 N.C. App. 198, 201, 660 S.E.2d 197, 199 (2008). Furthermore, given that Plaintiff alleges Cline was grossly

---

[4] For the same reason, to the extent that Plaintiff attempts to bring a claim of "collusion" or "conspiracy" against Cline, Harris, and Sanderson, Plaintiff fails to state a cognizable legal claim.

[5] Plaintiff vaguely references a "fraudulent confession statement" or "fake confession" but does not provide any factual details regarding the statement, including the contents of the statement, where it came from, which Defendant obtained the statement, or how the statement was used. (Id.).

negligent, Plaintiff cannot satisfy the "willfully" requirement of the statute. Finally, Plaintiff does not allege Cline or Harris made any false statements or that any acts by Cline or Harris were done for the "purpose of interfering with the operation of a law enforcement agency, or to hinder or obstruct any law enforcement officer in the performance of his duty." In sum, Plaintiff has failed to plead facts sufficient to state a claim against Defendants Cline and Harris under N.C.G.S. § 14-225.

To the extent Plaintiff is attempting to bring a claim for obstruction of justice under North Carolina common law, that claim is barred by the doctrine of public official immunity. The common law claim of obstruction of justice forbids any act which "prevents, obstructs, impedes or hinders public or legal justice." Jones v. City of Durham, 183 N.C. App. 57, 59, 643 S.E.2d 631, 633 (2007). It is well established that police officers who perform discretionary acts are immune from negligence claims. Shaw v. Stroud, 13 F.3d 791, 803 (4th Cir. 1994), cert. denied, 513 U.S. 813 (1994). Further, public official immunity bars negligence claims against investigating officers by suspects who are eventually acquitted. See Messick v. Catawba Cty., 110 N.C. App. 707, 718, 431 S.E.2d 489, (1993). As such, Cline and Harris are entitled to public official immunity on Plaintiff's state law claim, to the extent it has been raised.

To the extent Plaintiff is alleging a due process violation under federal law based on an alleged obstruction of justice, that claim fails as well. In Daniels v. Williams, the United States Supreme Court stated, "that the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." 474 U.S. 327, 328 (1986). The Fourteenth Amendment mandates, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Daniels holds that, as a matter of plain constitutional text, no "deprivation" occurs on account of official

negligence. 474 U.S. at 330-33. Indeed, negligent conduct cannot by definition establish the affirmative "abuse of power" necessary to constitute a due process deprivation. See id. at 330-32. Under Daniels, then, police officer negligence during an investigation cannot be actionable under Section 1983.

Finally, to the extent that Plaintiff alleges that Harris also obstructed justice by not intervening during the investigation process, Plaintiff fails to state a cognizable claim against Defendant Harris. To succeed on a theory of what is sometimes called "bystander liability," a plaintiff must show that the defendant police officer: (1) knows that a fellow officer is violating an individual's constitutional rights, (2) has a reasonable opportunity to prevent the harm, and (3) chooses not to act. Randall v. Prince George's Cty., Md., 302 F.3d 188, 204 (4th Cir. 2002). As described above, there is no viable claim for obstruction of justice related to Plaintiff's constitutional rights. Furthermore, Plaintiff's Amended Complaint is devoid of any allegations that Harris knew of any violations, had a reasonable opportunity to prevent the harm, and chose not to act. As a result, Plaintiff fails to state a claim against Harris for obstruction of justice.

In sum, for the reasons stated herein, the Court will grant the motion to dismiss filed by Defendants Cline and Harris.[6]

## 2. Plaintiff's Damages Claims against Defendant Sanderson

Next, as for Defendant Sanderson, Plaintiff's claims against Defendant Sanderson arise from his duties as an Assistant District Attorney in Lincoln County, North Carolina. The claims against Defendant Sanderson largely relate to the plaintiff's dissatisfaction with the time that he

---

[6] Defendants also raised qualified immunity as a defense to Plaintiff's claims. Because the Court has determined that there was no constitutional violation in the first instance, the Court does not need to determine whether Defendants are entitled to qualified immunity.

13

was held in custody while waiting for Defendant Sanderson to call his cases for trial relating to his May 2015 arrest. Plaintiff also appears to take issue with the fact that Defendant Sanderson charged him with being a habitual felon and that he tried the plaintiff on another charge while he was in custody awaiting trial on the May 12, 2015, charges.

Specifically, Plaintiff alleges Defendant Sanderson abused his discretion and authority given to him under state law regarding control over the criminal docket by not calling his cases for trial for approximately two years and always placing them at the end of the trial docket when he called them for a hearing. (Doc. 21 at 5-6). Plaintiff also alleges that Defendant Sanderson further violated his rights by not dismissing the two charges from May 2015 when another Assistant District Attorney chose to do so. (Id.). Plaintiff purports to bring claims against Defendant Sanderson pursuant to 42 U.S.C. § 1983 for alleged violations of his rights arising under the Sixth, Eighth, and Fourteenth Amendments and for malicious prosecution and wrongful imprisonment.

First, to the extent that Plaintiff has sued Sanderson in his official capacity, the claim will be dismissed. Claims against North Carolina district attorneys, and their assistants, in their official capacities are plainly claims against State officials and are barred by the Eleventh Amendment.[7] See Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2006). Moreover, the Supreme Court has confirmed that neither States nor state officials acting in their official capacities are "persons"

---

[7] The immunity under the Eleventh Amendment is not absolute; however, the exceptions are narrow. This defense is not available where one of the following three exceptions applies: (1) where Congress, while acting pursuant to its powers under the Fourteenth Amendment, has properly abrogated a state's immunity, Fitzpatrick v. Bitzer, 427 U.S. 445, 452-56 (1976); (2) where a state has waived its immunity to suit in federal court, Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); or (3) where a private party sues an appropriate state officer for prospective injunctive or declaratory relief from an ongoing violation of federal law, Ex parte Young, 209 U.S. 123, 155-56 (1908). None of these three exceptions applies in this case.

within the meaning of § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989).

Next, as for Plaintiff's claims against Sanderson in his individual capacity, Plaintiff's claims against Sanderson for alleged violations of his rights arising under the Sixth, Eighth, and Fourteenth Amendments and for malicious prosecution and wrongful imprisonment arise from actions or omissions which occurred entirely within the scope of his official duties as an Assistant District Attorney. The Supreme Court in Imbler v. Pachtman, 424 U.S. 409 (1976), first addressed the issue of whether a prosecutor, acting within the scope of his duties in initiating and pursuing a criminal prosecution could be held liable in a civil suit for damages. In Imbler, the Court held that a prosecutor was absolutely immune from civil liability when performing activities that are "intimately associated with the judicial phase of the criminal process." Id. at 430. A prosecutor is entitled to absolute immunity for claims that rest on his decisions regarding "whether and when to prosecute." Lyles v. Sparks, 79 F. 3d 372, 377 (4th Cir. 1996) (quoting Imbler, 424 U.S. at 431 n.33).

Defendant Sanderson has discretion over which criminal charges to take to trial, and he has control over scheduling cases to be called for hearing on the criminal court docket. The decision of whether and when to proceed to trial on a pending criminal charge is a duty unique to a District Attorney and their Assistants, and they are entitled to absolute prosecutorial immunity when performing this duty. Likewise, Defendant Sanderson is also entitled to absolute prosecutorial immunity for his decision to charge the plaintiff as a habitual felon and to prosecute him for another specified charge. In sum, the Plaintiff's claims against Defendant Sanderson all arise from actions he took while performing his prosecutorial duties; thus, Defendant is entitled to absolute prosecutorial immunity. This includes Plaintiff's claim for a violation of his Sixth Amendment right to a speedy trial. See Ledwith v. Douglas, 568 F.2d 117, 119 (8th Cir. 1978) (finding

plaintiff's "1983 claim for damages for libel and denial of a speedy trial are barred by the doctrine of prosecutorial immunity"); Dement v. Summers Cty. Courthouse, No. 5:13-cv-08899, 2015 WL 461560, at *11 (S.D.W. Va. Feb. 3, 2015) (holding prosecutor and assistant prosecutor were entitled to absolute immunity concerning plaintiff's claim that he was denied the right to a speedy trial); Barefoot v. Goulian, No. 5:08-ct-3162, 2010 WL 2696760, at *5 (E.D.N.C. July 7, 2010) (finding prosecutor entitled to absolute immunity for allegations that he failed to provide a speedy trial, withheld exculpatory evidence, and conducted warrantless searches of plaintiff's property); Edwards v. Sabb, No. 4:10-cv-998, 2010 WL 4347759, at *2 (D.S.C. Aug. 4, 2010) ("[T]he prosecutor has absolute immunity and cannot be sued in a District Court under 42 U.S.C. § 1983 for failure to afford Plaintiff a speedy trial.").

In sum, for the reasons stated herein, the Court will grant the motion to dismiss filed by Defendant Sanderson.[8]

**IV.  CONCLUSION**

For the reasons stated herein, Plaintiff's action is dismissed.

---

[8] Defendant Sanderson also contends that the court should refrain from exercising jurisdiction over any claims that relate to the plaintiff's pending state criminal proceedings and appeal under Younger v. Harris, 401 U.S. 37, 44 (1971), which provides generally that federal courts should not interfere with a state's pending criminal court proceedings, absent extraordinary circumstances. (Doc. 29 at 6).  It appears, however, that the charges that were pending when Plaintiff filed this action have been dismissed.  Thus, it does not appear that Younger abstention applies.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motions to Dismiss, (Docs. 23, 28), are **GRANTED**, and Plaintiff's action is dismissed.

2. The Clerk is directed to terminate this action.

Signed: August 13, 2019

Frank D. Whitney
Chief United States District Judge